UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

UNITED STATES OF AMERICA,

                      v.

DAVON BROWN,

                      Defendant.

------------------------------------------------------------X

**MEMORANDUM & ORDER**
20-CR-293 (WFK)
15-CR-287 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On September 22, 2022, Defendant pled guilty to Count Three of a twenty-count Superseding Indictment in 20-CR-293,[1] charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Plea Agreement ¶ 1, ECF No. 358. Pursuant to that plea agreement, Defendant also stipulated and admitted to the offenses contained in Counts One and Two of the Superseding Indictment, namely (1) assault in-aid-of racketeering in violation of New York Penal Law §§ 120.05(2) and 20.00 and 18 U.S.C. §§ 1959(a)(3) and 2, and (2) possessing, brandishing, and discharging a firearm during a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(i)-(iii) and 2. *Id.* ¶ 2. Additionally, Defendant pled guilty to Charge Five of the Violation of Supervised Release Report dated January 30, 2020 in 15-CR-287, as supplemented on August 19, 2020 and August 17, 2021. *Id.* ¶ 1. The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to 144 months of imprisonment, to be followed by three years of supervised release with standard and special conditions, forfeiture as set forth in the Order of Forfeiture, ECF No. 500, and payment of the mandatory special assessment of $100.00.

## I. BACKGROUND

The Federal Bureau of Investigation ("FBI") and the New York City Police Department ("NYPD") led the investigation into Defendant and other gang members for the instant offense. Presentence Investigation Report ("PSR") ¶ 6, ECF No. 581. Defendant is a member of the No Love City ("NLC") set, or neighborhood-based subgroup, of the Folk Nation Gangster Disciples ("GD"), a violent street gang operating out of Brooklyn, New York. *Id.* ¶¶ 6, 7. Central to GD's

---

[1] All docket citations and references to "Counts" of convictions are to 20-CR-293 unless otherwise stated.

1

tenets is the use of violence to retaliate against perceived slights to the gang or to enhance the status of members within the gang. *Id.* ¶ 6.

Soon after midnight on March 14, 2020, Defendant and other GD members became involved in a dispute with other individuals at a bar in Prospect Lefferts Gardens, Brooklyn, including a rival gang member of the Outlaw Gangsta Crips ("John Doe #1"). *Id.* ¶ 9. As the argument escalated, John Doe #1 used gang signs intended to disrespect the GD. *Id.* Surveillance footage shows the confrontation moved outside the bar, where Defendant took out a gun and fired it once into the air. *Id.* ¶¶ 9-10. Defendant then spoke with and handed the gun to one of his co-defendants, Christian Williams, who was with him at the bar. *Id.* Co-defendant Williams walked behind John Doe #1 and shot him at close range in the buttocks. *Id.* ¶ 10. John Doe #1 required surgery for his injuries. *Id.*

Defense counsel states Defendant was "attempting to diffuse the situation" when he fired the gun. Defense Sentencing Memorandum ("Def. Mem.") at 2, ECF No. 769. Defense counsel points to co-defendant Williams's testimony at trial, in which he said Defendant told him to "just chill" and "not to violate" John Doe #1. *Id.* (citing Trial Tr. at 408-09). According to co-defendant Williams, this supposedly meant Defendant "didn't really want the person to get hurt," which is why co-defendant Williams "intentionally shot [John Doe #1] below his waist just to calm him down," rather than murder him. *Id.* (citing Trial Tr. at 409-10). The Government argues, meanwhile, Defendant "handed the firearm to [co-defendant Williams] and told him to shoot John Doe #1," which co-defendant Williams promptly did. Government Sentencing Memorandum ("Gov't Mem.") at 1, ECF No. 778.

While co-defendant Williams fled the scene of the shooting, Defendant remained at the scene and told police officers he did not hear any gunshots. PSR ¶ 10. Police officers recovered

a .22 Magnum caliber revolver half a block south. *Id.* Testing on the gun later revealed DNA belonging to Defendant, co-defendant Williams, and a third person. *Id.*

On August 11, 2020, FBI agents arrested Defendant without incident. *Id.* ¶ 38. At the time of the instant offense, Defendant was on supervised release for a prior felony conviction. *Id.* ¶ 40.

On August 4, 2021, a grand jury returned a twenty-count Superseding Indictment, which alleges Defendant was a member of GD. ECF No. 51 ¶¶ 1, 8. According to the Superseding Indictment, GD is an "enterprise" as defined by 18 U.S.C. § 1959(b)(2) that engaged in racketeering activity as defined in 18 U.S.C. §§ 1959(b)(1) and 1961(1). *Id.* ¶¶ 4-5.

Defendant was charged with three counts in the Superseding Indictment: Count One, charging assault in-aid-of racketeering against John Doe #1, in violation of New York Penal Law §§ 120.05(2) and 20.00 and 18 U.S.C. §§ 1959(a)(3) and 2; Count Two, charging possessing, brandishing, and discharging a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i)-(iii) and 2; and Count Three, charging felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). *Id.* ¶¶ 10-13. The Superseding Indictment also contains a criminal forfeiture allegation as to all counts. *Id.* ¶¶ 44-45.

On September 22, 2022, Defendant entered a guilty plea to Count Three of the Superseding Indictment. Plea Agreement ¶ 1. Pursuant to that plea agreement, Defendant also stipulated and admitted to the offenses contained in Counts One and Two of the Superseding Indictment. *Id.* ¶ 2. Defendant stipulated to including the conduct charged in Counts One and Two in his sentencing calculations pursuant to the U.S. Sentencing Guidelines (the "Guidelines"). *Id.*; *see also* U.S.S.G. §1B1.2(c). Additionally, Defendant pled guilty to Charge Five of the Violation of Supervised Release Report dated January 30, 2020 in 15-CR-287, as

supplemented on August 19, 2020 and August 17, 2021 (the "VOSR" or "VOSR Report"),[2] charging Defendant with violating the mandatory condition of supervision prohibiting the commission of "another federal, state or local crime" by committing assault in-aid-of racketeering. Plea Agreement ¶ 1. Pursuant to the plea agreement, Defendant agreed not to file an appeal or otherwise challenge his sentence if the Court imposed a combined term of imprisonment for the Superseding Indictment and VOSR charges of 144 months or below. *Id.* ¶ 5.

## II. LEGAL STANDARD

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

---

[2] Reference to the VOSR or VOSR Report refers to the initial report and the additional supplements.

## III. ANALYSIS

### A. The Nature and Circumstances of the Offense and the History and Characteristics of Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

#### 1. Family and Personal Background

Defendant was born on August 7, 1994 in Richmond, Virginia to Antonio Brown and Arletha Darlene Brown. PSR ¶ 87. Defendant was not raised by his biological parents because his father left or was deported from the United States, and his mother abandoned him and his sister at a homeless shelter. *Id.*; Def. Mem. at 2. Lincoln and Winnifred Crossfield adopted Defendant soon after his birth and raised him in Brooklyn. *Id.* ¶¶ 88, 90. Mr. Crossfield, who Defendant refers to as his grandfather, passed away at age 83 in 2021. *Id.* Ms. Crossfield, who Defendant refers to as his grandmother, is 93 years old and currently lives in a nursing home. *Id.* ¶ 88. The Crossfields raised Defendant and his siblings in a middle-income household, free from abuse. *Id.* ¶ 90. Defendant has one adopted sister and two biological sisters, all of whom are aware of his conviction and are supportive. *Id.* ¶¶ 88, 89.

#### 2. Educational and Employment History

Defendant stated he attended Prospect High School in Brooklyn, New York; however, he transferred to Erasmus Hall High School because it was an easier commute. *Id.* ¶ 100. Defendant did not graduate because he was incarcerated during the 12th grade. *Id.* According to Defendant, he earned his General Educational Development diploma while incarcerated at Fishkill Correctional Facility in 2014. *Id.* ¶ 99.

Defendant held various jobs for a few months at a time, working at a contracting company between 2019 and 2020, in a warehouse in 2019, and as a waiter in 2011. *Id.* ¶¶ 101-105.

### 3. Prior Convictions

Defendant has numerous prior convictions. *See id.* ¶¶ 73-79. These include two felony convictions in 2012 at age 17 for criminal possession of a weapon in the second degree and robbery in the second degree, *id.* ¶¶ 74-75; two misdemeanor convictions in 2014 at age 19 for possession of a forged instrument in the third degree and petit larceny, *id.* ¶¶ 76-77; and one misdemeanor and one felony conviction in 2015 at age 20 for bad checks and racketeering conspiracy, respectively, *id.* ¶¶ 78-79. Defendant was on supervised release for his 2015 racketeering conspiracy conviction when he committed the instant offense. *Id.* at ¶ 79.

### 4. Physical and Mental Health

Defendant reported no chronic or serious problems with his physical or mental health. *Id.* ¶¶ 96-97. The mitigation report submitted by defense counsel states Defendant was born with drugs in his system, which may have been the cause of eye problems he suffered as a child and for which he required surgery. Ex. A to Def. Mem. at 12, ECF No. 769-1. Defendant was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") in elementary school. PSR ¶ 97. However, Defendant reported this diagnosis was made in error and the ADHD medication prescribed to him caused him to suffer negative physical side effects. *Id.*

### 5. Substance Abuse

Defendant consumes alcohol socially and has a history of marijuana use, although he last used marijuana several years ago. *Id.* ¶ 98. He does not view his alcohol or drug use as problematic or requiring treatment. *Id.*

6. Nature and Circumstances of the Offense

The Court's previous statements make clear the nature and circumstances surrounding the instant offense. *See supra* Part I.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offenses, which involved possessing a firearm while knowing he had previous felony convictions, discharging that firearm during an argument with a rival gang member, and then providing that firearm to a co-defendant to shoot the rival gang member. *See supra* Part I. Defendant committed the instant offense while on supervised release for a prior racketeering conspiracy conviction before this Court. *Id.* The Court's sentence will deter others from engaging in similar acts and justly punishes Defendant for his crimes.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to Count Three of the Superseding Indictment and to Charge Five of the VOSR Report. Plea Agreement ¶ 1. Defendant also stipulated and admitted to the offenses contained in Counts One and Two of the Superseding Indictment, which are to be

7

considered "as if the defendant had been convicted" of those counts. *Id.* ¶ 2 (quoting U.S.S.G. §1B1.2(c)).

For Count Three, Defendant faces a maximum term of imprisonment of 10 years and no minimum term of imprisonment. 18 U.S.C. § 922(g)(1). For Charge Five of the VOSR, Defendant faces a maximum term of imprisonment of two years and no minimum term of imprisonment. 18 U.S.C. § 3583(e)(3). For both Count Three and Charge Five, Defendant faces a maximum term of supervised release of three years. 18 U.S.C. § 3583(b)(2). If a condition of release is violated, Defendant may be sentenced to up to two years without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. §§ 3583(e), (h). Pursuant to 18 U.S.C. § 3561(c)(1), Defendant is eligible for a term of probation of not less than one nor more than five years on Count Three because it is a Class C felony. If a term of probation is imposed, a fine, restitution, or community service must be imposed, unless extraordinary circumstances exist. 18 U.S.C. § 3563(a)(2).

Defendant faces numerous other penalties. Defendant faces a maximum fine of $250,000.00. 18 U.S.C. § 3571(b)(3). However, Defendant's financial profile indicates he is unable to pay a fine. PSR ¶ 109. The Court is required to impose a mandatory special assessment of $100.00 pursuant to 18 U.S.C. § 3013(a)(2)(A). Defendant is also subject to the terms of the Preliminary Order of Forfeiture entered on November 2, 2022, which, by its terms, becomes final at this sentencing. Preliminary Order of Forfeiture, ECF No. 500. Pursuant to 18 U.S.C. § 3663A, Defendant also faces mandatory restitution. However, the amount of restitution is not determinable yet as the Court is still awaiting responses from Defendant's victim. PSR ¶ 120. Pursuant to the rule of *United States v. Catoggio*, 326 F.3d 323 (2d Cir. 2003), restitution should not be ordered when losses incurred by the victim are not identified. The Court reserves

its right pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within 90 days after this sentencing to determine the specific amounts owed to Defendant's victim.

### D.     The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." *Id.* § 3553(a)(4)(A).

The applicable Guideline for Count Three is U.S.S.G. §2K2.1(a)(4)(A), which provides a base offense level of 20 if the defendant committed any part of the instant offense subsequent to sustaining a felony conviction for a crime of violence or a controlled substance offense. PSR ¶¶ 41, 51. Two levels are added pursuant to U.S.S.G. §2K2.1(b)(4)(A) because the firearm was stolen. *Id.* ¶¶ 41, 52. Therefore, Count Three has an adjusted offense level of 22. *Id.* ¶ 55.

Defense counsel objected to the U.S. Probation Department's ("Probation's") reliance on a base level of 20 because, according to defense counsel, Defendant's 2013 second degree robbery conviction "is not counted as a crime of violence" under the Guidelines. PSR Addendum at 1, ECF No. 593. However, Probation disagreed, stating Defendant's prior robbery conviction satisfies the Guidelines requirements for a crime of violence because Defendant was convicted as an adult and received a sentence of 16 months to four years of custody. *Id.*; *see also* Plea Agreement ¶ 3 (Defendant stipulating to a base offense level of 20 for Count Three). The Court agrees with Probation that 20 is the correct base offense level for Count Three.

The applicable Guideline for Stipulated Count One is U.S.S.G. §2E1.3(a)(2), which directs that the base offense level is the offense level applicable to the underlying crime or racketeering activity, since it is greater than level 12. PSR ¶¶ 44, 56. Because the underlying crime constitutes aggravated assault, the applicable Guideline is U.S.S.G. §2A2.2(a), yielding a base offense level

9

of 14. *Id.* Pursuant to U.S.S.G. §2A2.2(b)(3)(A), three levels are added because the victim sustained a non-fatal bodily injury. *Id.* ¶¶ 44, 57. Therefore, Stipulated Count One has an adjusted offense level of 17. *Id.* ¶ 61.

The applicable Guideline for Stipulated Count Two is U.S.S.G. §2K2.4, which states the Guidelines sentence is the minimum term of imprisonment required by statute, which is 10 years. *Id.* ¶¶ 45, 62; *see* 18 U.S.C. § 924(c)(1)(A)(iii).

Pursuant to the Multiple Count Analysis laid out in U.S.S.G. §3D1.2, Count Three and the Stipulated Count One cannot be grouped. PSR ¶ 44. Pursuant to U.S.S.G. §§3D1.4(a) and (b), the first group of Count Three—at an adjusted offense level of 22—results in one unit, and the second group of Stipulated Count One—at an adjusted offense level of 17—results in one-half unit. *Id.* A total of one and one-half units increases the total adjusted offense by one level. *Id.* ¶ 65; *see also* U.S.S.G. §3D1.4. Stipulated Count Two is not included in the Multiple Count Analysis. PSR ¶ 63.

Defendant's timely acceptance of responsibility results in a three-level reduction pursuant to U.S.S.G. §3E1.1. *Id.* ¶¶ 68-69. Altogether, Defendant has a total adjusted offense level of 20. *Id.* ¶ 70.

Probation calculates Defendant's criminal convictions result in a criminal history score of 14. *Id.* ¶ 80. One point is added pursuant to U.S.S.G. §4A1.1(e) because Defendant committed the instant offense while on supervised release.[3] Based on U.S.S.G. Chapter 5, Part A, a total criminal history score of 15 establishes a criminal history category of VI.

---

[3] Probation asserts two points are added pursuant to U.S.S.G. §4A1.1(d) because Defendant committed the instant offense while in supervised release. PSR ¶ 81. Because Probation bases this on the since-amended 2021 Guidelines Manual, this is incorrect. However, a criminal history score of 15 or 16 both establish a criminal history category of VI, so this error is harmless.

10

Based on a criminal history category of VI and a total offense level of 20, Probation calculates Defendant's Guidelines sentencing range is 70 to 87 months of imprisonment. *Id.* ¶ 111. According to U.S.S.G. §5G1.3(a), the 10-year term of imprisonment for Stipulated Count Two is to run consecutively to any term of imprisonment imposed for Count Three. *Id.* According to Probation, this results in a total Guidelines range of 190 to 207 months of imprisonment. Nonetheless, the PSR notes the consecutive sentence is not statutorily required. *Id.*

The Government does not object to Probation's Guidelines calculations, which are also outlined in Defendant's plea agreement. Gov't Mem. at 2; Plea Agreement ¶ 3. Besides the objections listed in the PSR Addendum and noted above, defense counsel raises no objections to Probation's Guidelines calculations in its sentencing memorandum. Def. Mem. at 1. However, both the Government and defense counsel note Defendant's Guidelines range is restricted by the statutory maximum term of imprisonment for the instant offense. Gov't Mem. at 2; Def. Mem. at 1; Plea Agreement ¶ 3. The statutory maximum term of imprisonment for Count Three is 120 months. *Id.*; PSR ¶ 110. In addition, per the plea agreement, Count Five of the VOSR establishes a Guidelines range of imprisonment of 30 to 37 months;[4] however, the statutory maximum term of imprisonment for the VOSR is 24 months. Plea Agreement ¶ 3. Because the VOSR sentence must run consecutively to the sentence imposed for the Superseding Indictment, based on U.S.S.G. §7B1.3(f) (Policy Statement) and Application Note 4 to U.S.S.G. §7B1.3 (Policy Statement), the combined effective Guidelines range of imprisonment is 144 months. *Id.* The Government and defense counsel note Defendant stipulated to this sentence in his plea agreement and agreed not to appeal a conviction of 144 months or below. Gov't Mem. at 2; Def. Mem. at 1; Plea Agreement

---

[4] While this is the Guidelines range Defendant agreed to in his plea agreement, based on the judgment rendered in 15-CR-287, the correct range is 24 to 30 months pursuant to U.S.S.G. §7B1.4. *See* ECF No. 458 in 15-CR-287 (finding Defendant had a criminal history category of IV).

¶¶ 3, 5. The Court agrees Defendant has a total adjusted offense level of 20, a criminal history category of VI, and a combined, effective Guidelines range of imprisonment of 144 months for the Superseding Indictment and VOSR charges.

Probation recommends a sentence of 190 months of imprisonment to run consecutively to any custodial term imposed for the pending VOSR Report; three years of supervised release with special conditions; and payment of the mandatory $100.00 special assessment. Probation Recommendation at 1, ECF No. 581-1. Probation does not recommend the Court impose a fine, as it does not appear Defendant has the ability to pay. *Id.* at 2. Probation recommends Defendant be excused from the mandatory drug testing provisions during supervised release. *Id.* at 1. Probation's sentencing recommendation is based on the violent and gang-related nature of Defendant's conduct, which involving an injured victim, and the need for specific deterrence due to Defendant's criminal history. *Id.* at 2. Probation includes the 10-year consecutive sentence for Defendant's stipulated Count Two as keeping in line with the Guidelines ranges faced by similarly situated defendants. *Id.*

Defense counsel states Defendant has agreed to a combined sentence of 144 months of imprisonment, as outlined in the plea agreement. Def. Mem. at 1, 2. According to defense counsel, Defendant is "remorseful for his conduct. He takes full responsibility for the crime he committed and his violation of the conditions of his supervised release." *Id.* at 2. Defense counsel emphasizes Defendant's childhood circumstances, which include being "born with drugs in his system" to a mother who "abandoned him and his sister at a homeless shelter when he was an infant." *Id.* at 2. Despite being raised by a caring adopted family, Defendant struggled with not knowing his biological mother, whom Defendant only recently learned was murdered years ago. *Id.* "[Defendant's] background may have made him more susceptible to peer pressure and,

thereby, contributed to his joining a gang," writes defense counsel. *Id.* at 3. Nonetheless, Defendant "remains a devoted son" to his aging adopted mother and has a "strong support network that should help him move forward with his life after his release," according to defense counsel. *Id.* at 3.

This Court has read and considered the letters written by Defendant's family members, friends and supporters, and Defendant himself, along with a mitigation report and family pictures. *See* Exs. A-C to Def. Mem., ECF Nos. 769-1 – 769-3; Def. Letter, ECF No. 781. These materials describe Defendant as a devoted friend; a musically talented young man; and a loving son who doted on his parents as they aged. *Id.* The Court appreciates Defendant's words and those his advocates have said on his behalf.

The Government recommends a Guidelines sentence of 144 months of imprisonment. Gov't Mem. at 1. This sentence includes the statutory maximum of 120 months for the charges contained in the Superseding Indictment, running consecutively to the statutory maximum of 24 months for the VOSR charge. *Id.* The Government argues such a sentence is warranted because it "takes into account the seriousness of the defendant's offense," specifically "[t]he defendant's brazen use of a firearm as part of a gang dispute" which "resulted in a man being shot and easily could have turned deadly." *Id.* at 2. The Government argues such a sentence is necessary for both general and specific deterrence purposes because (1) Defendant's prior sentence and supervised release "clearly had no deterrent effect, demonstrating the need for a serious sentence to dissuade him from future criminal conduct" and (2) a sentence of 144 months would send a message "that those who commit such violence . . . will be held fully accountable." *Id.* at 2, 3.

This Court appreciates the sentencing arguments raised by all parties and has considered each of these arguments in turn.

13

### E.     Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

The parties have not expressly drawn the Court's attention to applicable policy statements. Finding none on its own, the Court proceeds to the next § 3553(a) factor.

### F.     The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G.     The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7).

As explained previously, restitution is mandatory in this case pursuant to 18 U.S.C. § 3663A. The Court reserves its right pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within 90 days after this sentencing to determine the specific amounts owed to Defendant's victim.

## IV. CONCLUSION

For the reasons set forth above, the Court imposes a sentence of 144 months of imprisonment; three years of supervised release with both the standard conditions of supervised release and special conditions; and the mandatory $100.00 special assessment. Forfeiture is ordered in accordance with the agreement dated November 2, 2022 at ECF No. 500. This

sentence, which encompasses both the Superseding Indictment and VOSR charges, is sufficient but no greater than necessary to accomplish the purposes of § 3553(a)(2). The Court does not impose a fine given Defendant's apparent inability to pay. The Court excuses Defendant from the mandatory drug testing provisions of 18 U.S.C. §§ 3563(a)(5) and 3583(d).

The Court expressly adopts the factual findings of the Presentence Investigation Report and addendum thereto, ECF Nos. 581 and 593, as corrected herein, to the extent those findings are not inconsistent with this opinion.

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: May 10, 2024
Brooklyn, New York